Skatteforvaltningen v. Martha Wintedal Mr. Wiener, you would like to reserve two minutes for rebuttal, is that correct? That is correct. Good morning, and may it please the Court. Andy Wiener for Defendant's Appeal in this case. The judgments against defendants should be vacated for several independent reasons, the first of two of which the Court reviews de novo. First, Skatte's claims are barred by the Revenue Rule, which provides that the courts of one sovereign will not enforce the tax claims of a foreign sovereign. Skatte seeks to recover erroneous refunds, which are revenue claims, and require the application of Danish tax laws. Second, the District Court erred in denying defendants' motions for judgments as a matter of law. On the fraud claims against Jocelyn Markiewicz and Elizabeth Van Merkensyne, absent any evidence that they committed fraud or entered into agency relationships with anyone who committed fraud. Finally, the deck was stacked against the defendants in this case. This Court has repeatedly said that on issues of mental state, District Courts should favor letting the evidence in and having the jury decide, while in this case, the District Court kept everything that it could that was helpful to the defendants, kept it out, most notably the testimony of Sanjay Shah, who did commit fraud in this case, and in testimony in Skatte's UK case, testified that he hid the fraud from these defendants. So turning to the Revenue Rule, the Revenue Rule, the issue here is whether the substance of the claims, either directly or indirectly, are ones for tax revenue. And the answer here is yes, under U.S. law, erroneous refunds are tax collection matters, even if no tax was owed as an initial matter, and even if the refunds were obtained by fraud. You can clearly see that under the two mechanisms by which U.S. law provides for the recovery of an erroneous refund. That would be 7405, erroneous refund suit in District Court, or as a matter of assessment, 6201. Both of those provisions are subject to statute of limitations that extend the limitations period in the instance of fraud. So the furthermore, in complement to that, not only under U.S. law, but under U.S. treaty law, if you look at the U.S.-Japanese Tax Treaty, that treaty defines revenue claims as including claims that an individual filed a fraudulent claim for refunds. And so here you have U.S. domestic law and U.S. international law speaking in one voice. Is it fair to read into the language of a tax treaty with another country, what that bearing has here? Is that a reasonable approach to take? I'm sorry, I'm having a lot of trouble hearing you. No, no, I'm sorry. I'm questioning whether it's fair to read into how we should interpret what's going on here based on a treaty with another country. Yeah, fair enough. However, the revenue rule itself. First of all, as we cited in Hynes v. Atreo, which had to do with a very similar rule regarding the enforcement of foreign penal law. The court indicated that it's not a matter of what the foreign country calls it. It doesn't matter whether it calls it a criminal law or a civil law. The question is whether it constitutes a penal law under our system. And so in Hynes v. Atreo, in the restatement of relations of foreign law, they both clearly say that this is a question of U.S. law. So, book two, how the issue would be handled under U.S. law. Which also informs, these are not independent issues. How we handle matters under U.S. law informs our treaty relations. In which, you know, where we enter into a treaty with Japan to say that, look, we will provide certain collection assistance when it comes to fraudulent claims for refund. And here's the limited amount of the assistance that we will provide. In the U.S.-Denmark treaty, no assistance is provided with respect to the nationals of our own country with respect to Denmark's past claims. So you view the Japan treaty as an exception that implies that, of course, with regards to every other country, there's a presumption that all of this falls within, I guess, all of this falls within revenue. I guess maybe my question actually goes more to that question of how to determine what falls under the question of what is revenue. If there's some type of claim that Japan could ever bring, it would not fall into the category of the revenue. Absolutely. Like what type of? If there was a contract claim, if there was a tort claim. Those things have nothing to do with tax revenue. The question that this court in Attorney General... Does that claim in this case have been reframed as a tort issue, maybe? Well, in the end of the day, what this court said in Attorney General of Canada is you look to the substance of the claim. It does not matter how the parties frame their cause of action. And, in fact, in Attorney General of Canada, you had the Canadian government coming to a U.S. court and saying, we're enforcing a civil RICO action, which has nothing to do with Canada law. And the court rightly said, well, we have to look to the substance of what you're trying to do here. And the substance is you're trying to enforce your tax laws. Just as the... I'm going to refer to it as SCAT, Your Honor. My Danish is not any good either. Just as SCAT has come into... SCAT is acting as a sovereign. It's being the exclusive administrator of Danish tax law. Coming into a U.S. court saying, we are pursuing these erroneous refunds that were obtained as a matter of fraud. And that, too, is a tax claim. So, here's what's confusing me, or at least I'm struggling with. We're calling these refunds. But they're not really refunds. There were no dividends. There was nothing withheld. This is a claim for a refund against something that doesn't exist. And I'm trying to figure out... Certainly, you would concede, I think, based on your response to my colleague, that if some scammer had sent a bunch of bills for photocopiers and all sorts of services that were never provided to SCAT, and SCAT had paid the bills, that wouldn't be a revenue rule claim if they were suing to reclaim them. And I'm just trying to figure out why, because there actually were dividends. There weren't withholdings. This isn't that. This isn't a bill for services that weren't provided. It's a fake thing. Rather than say, there had been withholdings, then the question of whether these people were entitled to them implicates tax law questions. Two responses. First of all, these were handled as substantive tax claims by SCAT itself. One of the things I think is really important here is that the submissions for effectively claims for refunds, they were called reclaim applications in Denmark, but these claims for refunds were received and then SCAT makes a substantive determination under its law, under its Tax Withholding Act, under Section 69B, and says, Okay, we've got this application. Here's the information provided in the underlying material. We have to make a substantive determination as to whether this taxpayer is entitled to the refund or not. Now, they made a determination, and they revoked that determination subsequently when they said there was fraud. Now, if the point is that, well, fraud brings it outside of the revenue rule, well, that's clearly not correct because we have tons of precedent in which fraud is not an exception to the revenue rule, and SCAT has even conceded that fraud is no exception to the revenue rule in this case. And for that point, I would refer the court to Bank of New Brazil, which was based on a fraudulent conspiracy, same type of claim that we have here. In fact, in Attorney General of Canada, you also have a fraudulent scheme that supposedly RJR perpetrated against the Canadian government, and that's one in which there's- But there were taxes due, right? There were taxes due, and the Canadian government came in and said, You people really owe those taxes. And the fraud was an operation to cheat us of the taxes. And so it seems to me that the distinction, at least, there was never any tax due here. This isn't really a tax case. Their fraud took the form of seeking a tax refund to which they weren't entitled, but there was never any taxation. Could you respond to the UK Supreme Court decision? Because my understanding is that the revenue rule is derived from common law, and presumably that would lead the various common law jurisdictions, the UK, Canada, and the U.S., to presumably have a similar, if not same, rule that applies today. They looked at this exact case and said this does not fall within the revenue rule, right? Correct, Your Honor. And my understanding is that they pretty much agreed that the district court's analysis here, if this is a lie, is that right? Yes, Your Honor. So tell us, is there a different revenue rule in the UK these days compared to what we have in your view? Have they evolved in different ways such that they don't mean the same thing? Because when I read Dicey's rule, it looks to me like it's stated the same way. Or is it that, in your view, the UK Supreme Court simply got it wrong? I think there are two things. I think, yes, the UK court got it wrong, and I'll explain, but also I do think that the UK court also acknowledges that there are different strains of the revenue rule and, in fact, points out on page 6 of its opinion that the U.S. version of the revenue rule has evolved differently. And I would also point out that the U.S. version of the revenue rule, as elucidated by this court in Attorney General of Canada, specifically speaks to things that are uniquely United States policies and interests, like separations of power. Well, then let me pause on that, then, if I could, because I want you to resume what you're saying. But in terms of a policy rationale, it seems that one of the most significant policy rationales that our courts have articulated in support of the revenue rule is we, as American courts, should not be engaging, when possible, in an assessment of what foreign countries' tax laws are and what they mean. And I get that, even though, all the time, we do wind up having to interpret and even apply foreign law. But this is an exception, the revenue rule. The thing is, how does that apply in this case, where I understood that, given the pretrial concession here, that there were, in fact, no beneficial ownership. There was no beneficial ownership. Everybody agreed, going into this trial, that there was no withholding, there was no refund that was due. The only question was, did the defendants understand this, what was going on? So there is no need, as I understand it, for the district court or our court to figure out what Danish law means, who actually owed what, if anything, to the Danish government. That's out the window. The only question is whether the defendants understood. So, in that circumstance, it seems to me, and it's kind of odd, but it seems to me our revenue rule cases have looked at the facts of the case to figure out, are we going to be tasked with the interpretation and application of foreign law? I don't see how we are. To figure out liability. You know what I mean? So, I don't know if you can respond. That was a lot. Yeah. I think there are three questions that I think you posed that I would like to respond to, taking them in reverse order, starting with your last one. The issue here is whether they, again, under a term in general of Canada, is whether the substance of the claim is one for tax revenue. Now, one of the ways in which the courts have looked heavily is whether it's an extraterritorial application of the foreign sovereign's tax laws. Now, it does not necessarily mean that it requires, it's not a difficult interpretation. It's not really. It's sort of more of an extraterritorial collection. I mean, it's like enforcement of a foreign judgment. They're not extraterritorially applying their laws, really. They absolutely are, Your Honor. But in this case, how? So, how did these erroneous refunds come about? They came about, again, by virtue of a request for refund coming in, a substantive determination that these amounts should be paid, and then a reconsideration following an audit in which they obtained information from the United States based on the treaty, based on the tax treaty provisions. And they said, look, we don't actually, and this is what IRS does all the time. We disagree with the substantive numbers that you provided, and based on that disagreement, based on the fraud that was perpetrated by Solow and Shaw here, we substantively determined that in a matter of Danish law, they were not entitled. Go to my question, which was, I get what you're saying, if this trial had been about whether anybody owes, who owes what under Danish law. But, again, my understanding is by the time this came to trial, those issues were out the window, everyone agreed that Denmark was on this money, that the only question is whether these defendants knew about it. So, what is it about the case? Has it evolved? And now it comes to us in this posture that requires anybody to delve into questions of Danish law. I thought that's a whole lot. In order to determine as to the fact that these refunds were, in fact, erroneous, I mean, you call it a collection action, but in order for it to be a collection action, there needs to be a determination that the refunds were, in fact, erroneous. And for the refunds to, in fact, be erroneous, you have to make a substantive determination. But I thought the district court didn't make the substantive determination. I thought there was a concession by the parties. That's what I'm saying. I thought the parties agreed that this money is owed back, that there was no Danish tax liability, that there was no appropriate tax refund. So, I get your point. If this had been a different trial, where everybody had to say, put six Danish tax professors on the stand, or provide affidavits to the district court to explain to the district court what Danish tax law was. But once that all got sucked out of the case, and what's left, so my question is, why is it that given what's left, which is just what are the defendants now, how is this still a revenue rule case? So, Your Honor, I want to be very precise about the concession that actually was made here. The concession that was actually made here is looking at all the discovery, looking at the analysis that was capable, through the litigation process, the defendants agreed that no shares were acquired by Solow. That's the concession. And that no dividends were issued. And that no dividends were issued to these defendants. So, no money was withheld from any dividends on account of any shares, relative to this case. Because there weren't any dividends to withhold money from. Yes. But, the important thing is that the single concession was that there were no shares. Now, What's left to determine under Danish law then? There was no money out there. There's no trickiness of Danish law.  nobody had to actually think more than, you know, what, 0.1 seconds to figure out, well, of course there's no Danish tax refunds. Your Honor, if you were to, by that logic, then you would, then fraud is out of the revenue rule. No, no, no, no, no. But, let's say there was a complicated thing where they owed some tax, like in Canada. These people owed tax to Canada, right? They're stocks. There's actual tax liability. We say, forget it. Revenue rule. Go away. But here, nobody owed tax. Nobody was owed a refund. It just seems like that was not in dispute, functionally. Right? Or was it? Was it functionally in dispute? No, no, no. Answer the question. Was it functionally in dispute that nobody owed any tax and nobody deserves a tax refund? Was that, were those two issues actually in dispute in this trial? In any real way? I'm failing to understand. Yes, it was in dispute in the sense that it was in dispute just as much as it was in dispute in Attorney General of Canada. Remember, RJR Nabisco, Oh, it was in dispute. Put aside Canada. You're saying it was actually disputed, and that may betray my lack of understanding of the trial. What was your side to you then? Or what evidence did you put in to say that, no, no, there were some refunds due to people? Did you put any evidence to that effect? No, Your Honor. Did you say that somebody did owe tax to the Danish government throughout these transactions? What would you say? No, no, no. Did anybody ask, did anybody on your side argue that there was a tax liability? No. Okay. So, I guess, going back to my initial question, you can then explain it. When I say, was this issue in dispute, I mean, were people putting in evidence on both sides, and were they arguing different sides of the tax liability issue to the court? No. Yeah, that sounds to me like not in dispute. Now, if you have a different definition of what was in dispute, tell me what that is. Okay. Your Honor, what was in dispute was the, well, obviously, the fraud, negligence, and unjust enrichment claims. The premise of all of those claims is that the taxpayers' defendants were entitled to the refunds that they received. Now, that is a concession that we made at the start of trial by virtue of the fact that we received no, that we received no shares. But just because you take one element of a claim off the table by virtue of a concession doesn't mean that that's not part of the case anymore. It's conceded. The end of the day, though, is that, I mean, I think more fundamentally, our argument with respect to the revenue rule is that it does not matter that no tax was owed in the first place. Look to U.S. law. It does not matter. Wilson squarely speaks to this. My question, if I can go back, this is, I think, a bigger framing of how the revenue rule works. We have lots of rules in the law that are categorical, right? If certain conditions are satisfied, there's no jurisdiction, or whatever, and it doesn't matter. You don't look on a case-by-case basis to see what happens and see the facts. The way we've interpreted the revenue rule seems to be a very case-specific thing. So, for example, when asking whether application of the revenue rule or not is warranted, we ask, what is the view of the executive? For example, and my understanding is the executive hasn't weighed in at all in this case, right? If the U.S. did it. Well, they haven't filed anything. That's what I mean. Yeah, so the U.S. knows. But, hypothetically, if the U.S. government had weighed in and said, we think that this is a perfectly good lawsuit, we love Denmark, they're our greatest ally, we want to support them, that, we have said in our cases, would matter, right? That if the U.S. had acquiesced and supported this through an amicus brief or statement of interest by the Department of State, Office of Legal Advisory, that would count. So, we have a very case-specific application of the revenue rule. Right? It's not simply, we ask, is it a tax-ish thing? If so, it's out the window. We have things like executive weighing in. And it seems to me like why, it seems to me that that sort of case-by-case analysis leads to the further analytical question of, does the actual adjudication of the claims in this case require a court to delve into the niceties of foreign law? And I think that's where, at least your opponents view, maybe the district court's view, comes in, because of the concession, that everybody knew there was no tax owed and no tax refunds due, this is not in the heartland of what the revenue rule was aiming to do. But that's a case-specific analysis. I would say that respectfully disagree, Your Honor, because the way that this court has laid out, and other courts have laid out the definition of the revenue rule, is you look to the substance of the claim. And by virtue of looking to the substance of the claim is informed by U.S. law, by U.S. treaty law, by international law, and in all of those respects, the basic principle is it does not matter if, for example, no tax was owed. I would suggest that the exclusion of this case from the revenue rule is unprincipled, because it's not informed by any substantive understanding of what a tax claim or a revenue claim is. It's as if the court held his finger up to the wind and said, this doesn't feel like a revenue claim to me. But that's in fact a revenue claim. This case doesn't require interpretation or application of disputed Danish tax laws. Not in dispute. That's correct. Hopefully that's how you understand our point. But that would be the argument that the foreign policy concerns that generally keep courts away from these tax issues fall away because nothing was in dispute. That would be the argument. That's a quite specific analysis. But that is, I mean, remember, this court has said that the revenue rule serves many masters, one of which is the expository, is one of sovereignty, that we are not going to become, this court is not going to become the arm of a foreign sovereign when it comes to enforcement of its tax law. But there are other issues, like Judge Warren Hans' view that this also weighs into policy considerations and courts shouldn't be in the position of making policy determinations as to whether or not in fact stat is operating its tax system adequately or appropriately. And there are other issues regarding separation of powers where one of the things that I think is really important about the U.S.-Japanese treaty is here you've got the executive. Now I agree that the executive branch has not weighed in in this case, but not yet in Canada it only weighed in at the third stage. So before this court there was no amicus brief. This is perhaps a fine point, but has either side ever asked the executive to weigh in one way or the other saying, you know, give us this case a blessing or tell the courts to butt out. Have you, either side, ever?  I mean, otherwise. You have a nice voice. You can speak for yourself. But I do think that the important thing here is that the question as to whether this is a tax claim or not. We have a mode of analysis that was not done here. I think it's important that the district court in this case called it garden variety  commercial fraud. Because that commercial is doing a lot of work there. Because this is a sovereign status coming into a U.S. court trying to  and even to use your words, this is a tax collection matter and calling it not a claim subject to the revenue role because obviously that creates problems for its ability to be able to utilize U.S. courts. But up until the point at which they crossed the Rubicon and filed suit,  absolutely did treat it as a Danish tax matter. We have a revocation of the refunds that were issued here in which SCAT laid it out as analysis. You no longer qualify under the withholding act. We've obtained information pursuant to the U.S. tax treaty, which by the way only provides information with respect to enforcement of domestic tax laws or treaty provisions. So by virtue of  looking to the United States for  they were recognizing that this was a tax claim. And then by virtue of litigation necessity, they have to pivot. And so they call it a fraud claim that's divorced from tax. But that doesn't make it so. Can I just pose a  Somebody in Denmark filed a fraudulent tax return pursuant to which they get more of a refund than they're really entitled to. Let's assume that's a revenue rule situation.  number two, complete identity theft. Not somebody claiming more of a refund than they're entitled to. Somebody impersonating somebody else filing a fraudulent return and absconding with the refund. Is that a revenue rule claim if that comes to the U.S. to get that money back? With respect to your first hypothetical, absolutely. With respect to the second one, it's a harder case because there's no substantive determination of the person who's perpetrating the fraud in that case. The nature of the fraud does not require a  determination of tax liability because they're pretending they're somebody else. Isn't that kind of this? They're pretending there were dividends that didn't even exist. I'm sorry, I didn't mean to interrupt, Your Honor. But that is how Denmark runs its tax system. Like us, we are self-reporting. Their withholding scheme works differently than ours. But like us, they require taxpayers to report numbers and then they make an evaluation. And there's      no substantive         substantive evaluation here was to initially issue the refunds. Now, I understand that that was a weak incentive. But in my second hypothetical, their substantive determination was to give refunds to this non-existent person who did identity theft to get the refund. I mean, the fact that the refund was procured through the mechanism of the tax system when it was all based on a fiction, I think you've agreed that that's not you said it was a tougher case. I don't know if you want us to agree that's not a revenue case. But if it is, I still don't understand why. Okay. I guess the reason why, when you said that this was identity theft, I thought that you were suggesting that, for example, the type of identity theft that we see a lot in our system, which is somebody impersonating another tax  And when you're talking about somebody impersonating another tax payer, it's not a substantive tax determination with respect to the person. They're pretending they're somebody else. Here, these tax defendants, we're not pretending they were anything other than the pension plans that are before you. They're impersonating other tax     individual  forms that are completely fabricated. It's a different kind of impersonation, but it's equally fictitious. Certainly equally fictitious. That's the nature of the hypothetical. But I do think the nature of the hypothetical   incorrect information provided was not dealt more with the substantive tax issues, whether you need the elements of whether you're entitled to a refund as opposed to pretending you're somebody who you're not. Your identity is not an element of whether you're entitled to refunds or not. That's why I think it's a harder case. If I can,   I know I'm way over, but I was hoping .      .  . .         One last click here, I want to change gears, I want to talk about why the wives here, Joshua and Elizabeth were titled as the wives     the evidence brought out was that they followed the advice of their husbands. That is the exact opposite of what agency relationships require. The theory of their case is that the wives were the principals directing the agents to carry out their     the wives took their husbands advice but did the things for themselves. They signed the  they signed a limited power of  for someone who is not accused of fraud in this case. If anything, the agent here is Adam Marosa and this is a way of trying to get the wives liability and the courts are protective about the marriage relationship with respect to agency relationships to make sure that you're not suddenly on the hook. That's exactly what happened. Thank you. Thank you very much, Mr. Weiner. We will now turn to counsel for the  Good morning, your  Mark Weinstein for plaintiff appellate. I serve as trial counsel for   With respect to  revenue rule, this was not a case of seeking to collect any taxes owed from anybody who ever owed taxes or was a taxpayer in any respect in Denmark. Appellants do not take a single case, single revenue rule, where that sovereign wasn't seeking to collect taxes due to the evasion of taxes. Let's flip it around and use that hypothetical which is the second one that Judge Robinson was using. It's a common scenario in the U.S. People are always stealing somebody else's social security number. They're doing it to a ton of people. U.S. citizens in Puerto Rico don't know federal income tax. They steal their social security numbers, file fake 1040s that claim a refund and they get all this money. It happens all the time. When they're caught, they're prosecuted in the  for tax evasion, filing false tax returns, 70206, 70201, 70202, whatever, all these tax provisions under Title 26 and the measure of the restitution to the government in criminal cases would always be the measure of the tax revenue that was paid out. And those were viewed as tax cases. How is it that a fake claiming of a tax refund is somehow not a tax case? I think in the hypothetical,   the person put in a fake tax return who owed no tax. Right, right, right, right. And they're prosecuted for tax. Your Honor, it's a tax evasion. I don't know that they are necessarily. But they're always prosecuted under Title 26. They ought to take that as a given for me. Regardless of how the U.S. decides to prosecute that kind of claim under its law. I guess my point is, this is taken into view, we domestically in the  view it as a tax crime. So, it's, and I think it is right under the revenue rule, we don't care about the revenue  The revenue rule jurisprudence about what label is put on, and that comes up in the  General Canada case,  where the underlying claim is the actual evasion of tax law. Where someone violated the tax law by evading     that implicates the revenue rule, which is we're not going to allow the U.S. courts to  policy matters when it comes to  issues, because they involve what a country may tax, how much it may cost,  the U.S.                     courts are not going to policy matters when it comes                             to evasion  law. The U.S. courts are  going to   it comes to evasion of tax law.             The U.S. courts are   policy matters when    of tax  The U.S.        evasion   The    going to tax law. The U.S. courts are not going to policy matters when       U.S. courts are not going to    to evasion     of  law. The U.S.           law.  U.S.           law. The U.S. courts are            The U.S. courts are  going to     comes to   law. The U.S. courts are not going to policy matters when it comes to  of  law. The U.S.      matters   comes to evasion of law. The U.S.                   matters    to law.  The U.S. courts are                  matters      The  U.S.          to   U.S.         comes to law. The  courts are not going to                            policy matters     evasion    U.S.       when it  to   law. The U.S.   going to        The U.S. courts are   to      to law. The  U.S.    when      U.S. courts are not      it comes to  The  U.S. courts  matters      The            U.S. courts are not going to  matters       U.S.    to policy matters when it  to law.                      going to    policy                    The U.S.    to policy matters when it comes to  The                          U.S. courts are                      to     law. The U.S.                      comes to law.  The U.S. courts are   to policy                      matters                 to law. The     to policy    matters when     The U.S.                going to policy matters when it comes to law. The                         U.S. courts are  going to policy matters to   policy       The U.S. courts are policy  matters when it   law. The U.S.   when    it comes   The U.S. courts are to policy   matters      The U.S. courts are not going to policy       The U.S.    to policy matters when it comes to law. The U.S.      matters  going                          to policy matters                    U.S.  not  to  policy  when  The U.S.      matters      The U.S. courts matters when it comes   The   courts are     it comes to law.   courts are  policy            matters   comes to law. The U.S. courts are to policy matters when it comes to law. The U.S. courts are to policy       matters when it comes to law. The U.S. courts are      comes to           the U.S.   first is to start off, I want to emphasize again as I was trying to state the facts in the beginning. We are in this situation because Mr. Hager specifically chose the doctor. That's what happened because in the plan it says if you actually choose the  doctor, then the right to assign the  evaporates. We are talking about a situation here. His choices led to the anti-assignment. An anti-assignment is a jurisdictional question. I don't know what value the  places on the decision of Spindex which specifically equated article 3 standing with the ability to have an assignment and bring a claim. In our mind from that case log it seems to me that the standing, the jurisdictional question is relating to the assignment. Also, I think it's really important to point out that if we did win a dollar against Doxer, he mentioned if we won a dollar we could pursue it from the patient who undermined all of California law. If we won a dollar that would be the end. We couldn't go any  We had our chance in court. We had our day in court. We had our opportunity. There would be nothing left for us. We got our chance. Here we got nothing. We were told by the central district you can't pursue Mr. Hager. Then we were told by the southern district you don't have any rights against Oxford. We pled an  complaint to try to in every possible way in every possible way to show the court we'd like to have standing for something. In every possible way the court said no. If all those claims are preempted you can't bring those claims against Oxford directly. The court doors have been closed to us. We filed a case where the statute of  defense was asserted by the defendant. If that had been true that would be the end of the case as well. We just want an opportunity to seek the amount we believe we are owed for the medical services. We think the California law was a            have to have a chance to alleviate whatever they think is the amount they should be paid for those services. I thank the court. Thank you. Thank you very much. All counsel including those remote we will take the case under advisement. This court having completed the business for which it has convened today will now stand adjourned. Thank you all very much. Thank you all. Thank you all. Thank you all.